# EXHIBIT 1

**DECLARATION OF AAU PRESIDENT BARBARA R. SNYDER**

I, Barbara R. Snyder, declare as follows:

1. I am President of the Association of American Universities ("AAU"). I have held that position since October 1, 2020.

2. I have personal knowledge of the contents of this declaration, or have knowledge of the matters set forth below based on my review of information and records gathered by AAU personnel and information reported to AAU by its member institutions, and could testify thereto.

3. Founded in 1900, AAU is composed of America's leading research universities. AAU's member universities transform lives through education, research, and innovation. AAU member universities collectively help shape policy for higher education, science, and innovation; promote best practices in undergraduate and graduate education; and strengthen the contributions of leading research universities to American society.

4. AAU's primary goal is to provide a forum for the development and implementation of institutional and national policies promoting strong programs of academic research and scholarship and undergraduate, graduate, and professional education. A central part of AAU's mission is to ensure that its members are able to conduct research that improves public health, addresses national challenges, and contributes significantly to America's economic strength.

5. International students play a vital role in advancing the critical science, technology, and other research being performed at AAU's member institutions, and are also important members of the campus communities at those institutions. Promoting member institutions' abilities to attract, enroll, and educate the best students—including students from around the world—is an important part of AAU's mission.

6. AAU's members include 69 public and private research universities in the United States—among others, Columbia University, Cornell University, Dartmouth College, the

University of Illinois Urbana-Champaign, Michigan State University, the University of Pennsylvania, the University of Wisconsin – Madison, Vanderbilt University, and Washington University in St. Louis, each of which are submitting declarations in this litigation that provide institution-specific details on the matters described here.

7. All of AAU's U.S.-based member institutions are certified by the Student and Exchange Visitor Program ("SEVP") to enroll international students on F-1 visas. AAU's member institutions enroll hundreds of thousands of F-1 students each year and collectively authorize thousands of F-1 students to participate in curricular practical training ("CPT") each year.

Importance of Experiential Learning, Including CPT, for Member Institutions

8. Experiential learning is a critical component of educational advancement and research. Through opportunities like internships, practicums, and clinic or field placements, students are able to bridge the gap between abstract concepts and real-world application. Moreover, these experiences help students learn about and identify research topics that are relevant, rigorous, and responsive to society's evolving needs. Students across numerous fields—such as engineering, computer science, public health, social work, and the sciences—learn the techniques and develop the professional judgment that classroom instruction alone cannot supply. Through experiential learning, these students are educated and trained by top leaders in hospitals, laboratories, public agencies, and other organizations—offering experiences, insight, and perspectives that university faculty alone cannot provide.

9. Many of AAU's member institutions rely on experiential learning to advance their students' education across different disciplines, degrees, and programs. Member institutions have built experiential learning into their curricula in many forms, including credit-bearing internship courses, cooperative education programs, consulting practicums in business programs, research

placements supporting capstone projects or similar individualized research efforts. Several member institutions have made experiential learning a key priority, including through initiatives and dedicated programs seeking to connect students with potential host organizations.

10. For international students with F-1 status, AAU's member institutions and their Designated School Officials ("DSOs") rely on CPT to authorize those students to enroll in credit-bearing practical training as part of their degree programs.

<u>The Recent Broadcasts</u>

11. I am familiar with the Broadcast Messages—numbered 2608-01 and 2608-02—that were issued by SEVP on August 12, 2026, and August 24, 2026, respectively (the "Broadcasts"). I understand that the Broadcasts purport to interpret the regulatory requirement that CPT be "an integral part of an established curriculum." 8 C.F.R. § 214.2(f)(10)(i). In particular, the Broadcasts announce a more restrictive interpretation of when CPT is available, allowing CPT only when practical training is mandatory for all students in a degree program. Under that interpretation, member institutions can no longer authorize CPT for internships and similar experiential opportunities that are part of an institution's established curriculum and are awarded academic credit, but are not required of every student in a given degree program.

12. Prior to the Broadcasts, AAU and its members understood that a practical training opportunity for which a student earns academic credit toward their degree constitutes an "integral part of an established curriculum" and is therefore CPT-eligible, regardless of whether that specific opportunity is a mandatory requirement of the student's degree program or is required of every student in the program. That understanding was based on the text of the CPT regulation and on longstanding guidance issued by SEVP, the Department of Homeland Security ("DHS"), and the Immigration and Naturalization Service.

13. The recent Broadcasts announce a new interpretation of when CPT is permitted, directing DSOs to authorize CPT only "if its absence would make the attainment of a degree an impossibility and if the work associated with CPT is required for all students pursuing that degree." The first Broadcast was styled as a "reminder" of the responsibilities of DSOs, but it announced a significant change to the requirements for CPT eligibility and threatened DSOs with personal liability for CPT authorizations that were contrary to the Broadcast, thereby causing fear and confusion among member institutions and their employees. The first Broadcast was issued when many members were about to begin their fall semester, and was followed twelve days later—when even more AAU members had begun their academic year—by a Q&A that reiterated the narrower interpretation, again without acknowledging the departure from prior longstanding guidance.

Harm to AAU's Members from the Broadcasts

14. AAU's member institutions and their students have already experienced significant harm as a result of the Broadcasts, and they will continue to experience these harms as long as the Broadcasts are in effect.

15. In particular, the Broadcasts express the position that CPT is no longer permitted for practical training opportunities that would earn academic credit but are not required of all students to obtain a degree, thereby causing member institutions to stop authorizing CPT for those opportunities. As described in more detail in declarations submitted by AAU members, based on the Broadcasts, member institutions have denied (or been unable to authorize) numerous CPT opportunities in the opening weeks of the fall term alone, including opportunities for credit-bearing internships. The loss of these opportunities is significant—many CPT opportunities that offer academic credit but are not mandatory still provide invaluable educational opportunities for students, and are important parts of institutions' overall educational offerings.

16. The loss of these practical training opportunities is irreplaceable. As outlined in more detail in the declarations submitted by AAU members, there is no guarantee that a practical training opportunity that is available one semester will continue to be available in a future semester. Additionally, for many students—especially seniors or others approaching the end of their degree programs—this lost opportunity to engage in CPT is unrecoverable. And many of these students have been planning to engage in CPT-authorized practical training opportunities for months, if not years. Students have already declined or lost internship offers for the fall term, withdrawn from internship courses after the semester began, and, in at least one instance, an F-1 student was informed that their internship offer would be rescinded absent CPT authorization by a specific date. *See, e.g.*, UIUC Decl. ¶ 22. Member institutions also report that the Broadcasts have interfered with doctoral students' ongoing research, such as by causing them to lose access to external data, facilities, and equipment. *See, e.g.*, Cornell Decl. ¶ 27; MSU Decl. ¶ 7.1.1.

17. It may not be feasible or pedagogically sound for institutions to make practical training a mandatory requirement for all students in those degree programs. There are many reasons why educators would decline to make experiential learning mandatory for all students in a degree program, even when it is critical for some students' education. For example, some students earning a particular degree may wish to pursue academic research that can be done in the classroom, while other students earning that same degree may wish to prioritize clinical opportunities that are better suited to practical training. Making practical training mandatory for all students earning that degree would not serve the institutions' or students' broader educational objectives. Member institutions also report practical obstacles to mandating experiential learning. Curricular changes require faculty review and, at some institutions, approval by state education authorities or accreditors. *See, e.g.*, Cornell Decl. ¶ 16; UIUC Decl. ¶ 35. Institutions in some cases

cannot guarantee placements for every student in certain degrees, making mandatory practical training unworkable. *See, e.g.*, UIUC Decl. ¶¶ 18, 20. And adding a new requirement for practical training to a degree may also increase tuition cost and time to degree, including for students whose academic paths do not require such training. *See, e.g.*, *id.* ¶ 18.

18. Nor is it a realistic alternative for F-1 students to pursue these experiential learning opportunities through pre-completion OPT. The EAD process takes several months on average, and its timing can be unpredictable, which will preclude many students at member institutions from securing approval for practical training programs in upcoming terms this academic year. Additionally, pursuant to SEVP guidance, and in the experience of AAU member institutions, students may apply for pre-completion OPT no earlier than 90 days before their proposed start date, yet USCIS's stated processing time for these applications is currently approximately five months, and premium processing costs an additional $1,780 on top of the standard $470 filing fee. Moreover, F-1 students facing an unpredictable EAD waiting period may be unable to commit to practical training experiences that require students to start by a particular date—even if, ultimately, they would have obtained OPT approval in time. That unpredictability also complicates students' ability to arrange academic credit for their practical experiences; and without academic credit, students will have to carry a full course load while also participating in their pre-completion OPT, which will make the opportunities more burdensome for at least some students.

19. Furthermore, because time spent on pre-completion OPT is subtracted from the twelve months of OPT a student would otherwise have available, requiring students to use OPT for programs previously eligible for CPT will reduce international students' overall access to practical training both while they are enrolled at member institutions and in the year following the completion of their degrees.

20. If the Broadcasts remain in effect, they will result in far fewer CPT and experiential learning opportunities being available at AAU's member institutions. This will uniquely harm F-1 international students, as these experiential learning opportunities will continue to remain available for other students.

21. Member institutions report additional harms beyond the loss of individual training opportunities. For example, member institutions report that the Broadcasts have chilled their DSOs' exercise of professional judgment. *See, e.g.*, Cornell Decl. ¶ 33; Dartmouth Decl. ¶ 14; UPenn Decl. ¶ 6; Vanderbilt Decl. ¶ 10; Wisconsin Decl. ¶ 35. DSOs must comply with the Broadcasts' newly announced standard, knowing that DHS has threatened them with personal liability if DHS later disagrees with their determinations; as a result, some have grown reluctant to authorize even those opportunities they believe satisfy the regulation. Additionally, following the Broadcasts, international services offices have reported increased inquiries from students regarding CPT and have diverted substantial time from other responsibilities to respond to students, review curricula, and evaluate individual placements. *See, e.g.*, Columbia Decl. ¶ 7; MSU Decl. ¶ 7.3.2; WashU Decl. ¶ 10.

22. Member institutions also report harm to the recruitment and retention of international students. Institutions have received feedback from current and prospective international students that the narrowing of CPT is a strong disincentive to come to, or continue studying in, the United States, and some students have already decided to leave programs or have inquired about transferring to institutions in other countries. *See, e.g.*, Columbia Decl. ¶ 8; Cornell Decl. ¶¶ 25, 27-28; MSU Decl. ¶ 7.4.2; UIUC Decl. ¶ 29. International students frequently decide where to study based in part on the availability of practical training, and therefore member institutions expect the Broadcasts to reduce international student enrollment, which would result

in institutions losing tuition revenue, research productivity, and the contributions international students make to campus communities.

23. Should AAU's member institutions fail to comply with the Broadcasts' new interpretation of the CPT regulation, DHS has threatened to withdraw their SEVP certification, and has warned that individual DSOs—who certify CPT authorizations on the Form I-20 under penalty of perjury—may face "administrative or legal consequences," including "potential penalties for providing false information or misrepresenting the nature of the training." If SEVP certification were withdrawn, a member institution would immediately lose the ability to issue new Forms I-20, effectively eliminating its ability to admit new F-1 students. F-1 students already enrolled, meanwhile, would likely need to transfer. 8 C.F.R. § 214.4(i). The loss of SEVP certification would be devastating to a member institution, given the importance of F-1 international students to the broader community at that institution. Moreover, even if an institution succeeded in maintaining its SEVP certification, defending themselves in a DHS investigation would be costly, causing the institution to expend resources it will never recover.

24. All of the above harms (and threats of harm) are currently in effect, and will continue absent judicial relief against the Broadcasts. Moreover, these harms are increasing every day. Students are already planning and seeking internships and other opportunities for the Spring semester and summer of 2027, and DSOs are actively advising on those requests. Member institutions report that processing CPT requests for the spring typically begins in October, that employers issue most summer internship offers during the fall, and that recruiting for summer 2027 positions in fields such as law is already underway. Accordingly, even though institutions are already injured by the Broadcasts, they and their students will be harmed even more significantly absent urgent relief from the Broadcasts.

25. Setting aside the Broadcasts and enjoining DHS from enforcing the regulatory interpretation articulated in the Broadcasts would immediately remedy these harms. Member institutions would be able to resume authorizing CPT as they had prior to the Broadcasts, consistent with the regulation and its longstanding meaning.

26. Relief would also benefit the broader public. Through CPT, students both learn from and contribute to research, innovation, and the broader communities surrounding member institutions. And host organizations have contacted member institutions to express concern that the loss of CPT will harm their existing plans and future operations.

27. I understand that several of AAU's member institutions will explain at greater length in their own declarations how the Broadcasts have affected their educational programs, students, and staff, as well as the need for relief against the Broadcasts.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 4, 2026
Washington, DC

Barbara R Snyder

Barbara R. Snyder
President
Association of American Universities