UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASSOCIATION OF AMERICAN UNIVERSITIES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>Defendants. | Civil Action No. 26-14520-JEK |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND STAY OF AGENCY ACTION**

Defendants, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, the U.S. Department of Justice, Markwayne Mullin, in his official capacity as Secretary of Homeland Security, David Venturella, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, and Todd Blanche, in his official capacity as Attorney General, respectfully submit this opposition to Plaintiffs' motion for a preliminary injunction and a stay of agency action.

**INTRODUCTION**

Four organizations - the Association of American Universities, the Presidents' Alliance on Higher Education and Immigration, the Association of Independent Colleges and Universities in Massachusetts, and National Association of Foreign Student Advisors ("NAFSA"): Association of International Educators ("Plaintiffs") - raise challenges to two broadcast messages issued by the Student and Exchange Visitor Program ("SEVP") whereby the Department of Homeland Security ("DHS") reminded Principal Designated School Officials ("PDSOs") and Designated School

Officials ("DSOs") (collectively "DSOs") of the regulations concerning Curricular Practical Training ("CPT") and their responsibilities regarding its authorization.

The two broadcasts at issue remind DSOs that, for international students here on nonimmigrant F-1 visas, CPT may be authorized provided it is integral to their program of study, required of all students participating in that curriculum, regardless of citizenship.

This Court should decline Plaintiffs' request for injunctive relief due to multiple flaws with Plaintiffs' motion. First, Plaintiffs lack standing to bring this case. Second, even if the Court disagrees and finds Plaintiffs have standing, they have no likelihood of success on their claims. The broadcasts do not constitute final agency action, the broadcasts are not arbitrary and capricious and are in accordance with law and applicable regulations, Plaintiffs have not shown irreparable harm, and the equities and public interest favor Defendants.

The Executive Branch has legal authority to decide how to exercise its discretion regarding international students seeking education here and Congress has delegated authority to the Secretary to implement and oversee the SEVP. There is nothing unlawful about the two broadcasts, which provide reminders and guidance on authorized training to foreign students here on F-1 visas. Plaintiffs' motion should be denied.

## BACKGROUND

### I. Legal Background

The Immigration and Nationality Act ("INA"), as amended, allows for the entry of an alien, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i). To be admitted in F-1 status, an applicant must present a Form I-20,

Certificate of Eligibility for Nonimmigrant Student Status, issued by a certified school in the student's name; present documentary evidence of financial support; demonstrate he or she intends to attend the school specified on the student's visa; and, if the student attends a public secondary school, demonstrate that he or she has reimbursed the local educational agency administering the school for the full, unsubsidized per capita cost of providing education at the school for the period of the student's attendance. 8 C.F.R. § 214.2(f)(1)(i). To maintain F-1 student status, an alien must make "normal progress toward completing a course of study" indicated on the Form I-20 (*id.* § 214.2(f)(5)(i)) or engage in authorized practical training as follows, per 8 C.F.R. § 214.2(f)(10):

> **(10) *Practical training.*** Practical training may be authorized to an F-1 student who has been lawfully enrolled on a full-time basis, in an approved SEVP-certified college, university, conservatory, or seminary for one full academic year. This paragraph (f)(10) also includes students who, during their course of study, were enrolled in a study abroad program, if the student had spent at least one full academic term enrolled in a full course of study in the United States prior to studying abroad. A student may be authorized 12 months of practical training, and becomes eligible for another 12 months of practical training when they change to a higher educational level. Students in English language training programs are ineligible for practical training. An eligible student may request employment authorization for practical training *in a position that is directly related to their major area of study*. There are two types of practical training available:
>
> (i) ***Curricular practical training.*** An F-1 student may be authorized by the DSO to participate in a curricular practical training program *that is an integral part of an established curriculum*. Curricular practical training is defined to be alternative work/study, internship, cooperative education or *any other type of required* internship or practicum that is offered by sponsoring employers through cooperative agreements with the school. Students who have received one year or more of full time curricular practical training are ineligible for post-completion academic training. Exceptions to the one academic year requirement are provided for students enrolled in graduate studies that require immediate participation in curricular practical training. A request for authorization for curricular practical training must be made to the DSO. A student may begin curricular practical training only after receiving their Form I-20 or successor form with the DSO endorsement. *To grant authorization for a student to engage in curricular practical training, a DSO will update the student's record in SEVIS as being authorized for curricular practical training that is directly related to the student's major area of study.* The DSO will indicate whether the training is full-time or part-time, the employer and location, and the employment start and end date. The DSO must sign, date, and return the Form I-20 or successor form to the student prior to the student's

> commencement of employment indicating that curricular practical training has been approved.

*Id*. § 214.2(f)(10)(i) (emphasis added).

International students here on F-1 visas are also eligible for Optional Practical Training ("OPT") per 8 C.F.R. § 214.2(f)(10)(ii) as follows:

> **(ii)** ***Optional practical training***—(A) *General.* Consistent with the application and approval process in paragraph (f)(11) of this section, a student may apply to USCIS for authorization for temporary employment for optional practical training directly related to the student's major area of study. The student may not begin optional practical training until the date indicated on his or her employment authorization document, Form I-766. A student may be granted authorization to engage in temporary employment for optional practical training:
>
> ***(1)*** During the student's annual vacation and at other times when school is not in session, if the student is currently enrolled, and is eligible for registration and intends to register for the next term or session;
>
> ***(2)*** While school is in session, provided that practical training does not exceed 20 hours a week while school is in session; or
>
> ***(3)*** After completion of the course of study, or, for a student in a bachelor's, master's, or doctoral degree program, after completion of all course requirements for the degree (excluding thesis or equivalent). Continued enrollment, for the school's administrative purposes, after all requirements for the degree have been met does not preclude eligibility for optional practical training. A student must complete all practical training within a 14-month period following the completion of study, except that a 24-month extension pursuant to paragraph (f)(10)(ii)(C) of this section does not need to be completed within such 14-month period.[1]

The foregoing CPT regulation, 214.2(f)(10)(i), is clear that CPT must be an integral part of a student's field of study, not merely related or somehow beneficial. The definitional clause identifies the specific forms of CPT that are authorized: "alternative work/study, internship, cooperative education or any other type of required internship or practicum…" Also, CPT must be offered by "sponsoring employers through cooperative agreements with the school." The

[1] Plaintiffs' Complaint (ECF No. 1) and motion focus on CPT. However, in addition to CPT, international students are also entitled to OPT and may be eligible for additional training not covered by CPT. Thus, international students are afforded several avenues to obtain training while in the United States.

foregoing CPT regulation evinces a clear, structured system governing the training of nonimmigrant students who are here in the United States. Nonimmigrant students here on F-1 visas are eligible for practical training "in a position that is directly related to their major area of study" and for CPT "that is an integral part of an established curriculum" and "directly related to the student's major area of study."

The State Department's Foreign Affairs Manual confirms that CPT training must be an integral part of a student's specific curriculum, generally involving internships and work-related experience specifically required by the student's program of study. *See* 9 FAM 402.5-5(N)(4).

DHS issued two broadcasts in August 2026 to SEVP certified institutions regarding the requirements for authorization of CPT for international students. Contrary to Plaintiffs' assertions, these Broadcasts merely clarify and provide guidance regarding the pre-existing requirements for CPT authorization.

## II. <u>The Broadcasts at Issue</u>

### A. Broadcast Message 1

On August 12, 2026, DHS issued Broadcast Message 1, BCM No. 2608-01: "Reminder of Liability for DSOs Regarding CPT Authorization". *See* Exhibit A. Per this broadcast, SEVP indicated that it had observed a rise in CPT authorizations that do not meet the regulatory requirements, "specifically those not constituting an integral part of an established curriculum." As a result, SEVP increased its scrutiny of CPT approvals "to ensure compliance with federal regulations." *Id.*

Specifically, the Broadcast reminded DSOs that CPT for international students can only be authorized when "the training is an integral part of an established curriculum and is directly related to the student's major area of study." *Id.* CPT must be "a core and essential part of the student's studies, without which, they would be unable to complete their degree." *Id.* The Broadcast

reminded DSOs that F nonimmigrant students have attested that they are here in the United States "solely for the purpose of pursuing a full program of study." *Id*.

Thus, this Broadcast merely reiterates that international students can receive CPT and SEVP certified schools can authorize such training provided it is truly integral to their program of study.

**B. Broadcast Message 2**

DHS issued Broadcast Message 2 on August 24, 2026, BCM No. 2608-2: "Guidance for Designated School Officials Regarding Curricular Practical Training". *See* Exhibit B. This Broadcast referenced Broadcast 1, BCM No. 2608-1, and its directive that CPT is only to be authorized when integral to an established curriculum. *Id*. at 1. This Broadcast provides guidance to DSOs at SEVP-certified schools regarding authorization of CPT.

DHS reiterated to SEVP-certified institutions that the rise in CPT authorizations not in compliance with the regulations is a matter of great concern. "Accurate and timely reporting by schools and students allows SEVP to manage the Student and Exchange Visitor Information System (SEVIS), a critical tool in SEVP's mission to protect national security and ensure the integrity of the nation's educational and cultural exchange programs." *Id.* The Broadcast informed the schools that CPT differs from Optional Practical Training ("OPT") in that OPT is not required to be an integral part of a student's established curriculum and does not have to fulfill the requirements of a student's program of study.

**III. <u>The Plaintiffs and this Motion</u>**

Plaintiffs filed this case under the Administrative Procedure Act ("APA") on October 5, 2026. *See* Compl. (ECF No. 1). On the same day, the Plaintiffs filed their motion for a preliminary injunction, which basically mirrors the allegations in the Complaint. *See* Pls.' Mot. (ECF No. 8). They seek to enjoin the Defendants from "implementing or enforcing the Broadcasts'

interpretation of the CPT regulation and stay the Broadcasts under 5 U.S.C. § 705 pending judicial review." *Id*. at 5, 45. Plaintiffs bring their APA claims on behalf of their members – "colleges and universities, as well as the officials who administer international programs…" *Id*. "Plaintiffs are member organizations that represent both institutions and individual DSOs" that claim to have been impacted by the Broadcasts. *Id*. at 6.

In support of their motion, Plaintiffs make several faulty arguments under the APA. They claim the Broadcasts are final agency action that is arbitrary and capricious, are impermissibly retroactive, are contrary to law, and constitute impermissible rulemaking without required notice and comment. *See* Pls. Mot. At 15-16. Plaintiffs are incorrect.

**LEGAL STANDARD**

Preliminary injunctive relief is extraordinary and never awarded as of right. *Maine Forest Prods. Council v. Cormier*, 51 F.4th 1, 5 (1st Cir. 2022); *D.V.D v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 386 (D. Mass. 2025). To obtain such relief, Plaintiffs must establish a likelihood of success on the merits, irreparable harm absent preliminary relief, favorable balance of equities, and that an injunction serves the public interest. *D.V.D*, 778 F. Supp. at 386 (citing *Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2022)). "Of the four factors, likelihood of success weighs most heavily in the analysis." *Id*. (citing *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020)).

Although the most important factor is "likelihood of success on the merits," *Akebia Therapeutics, Inc. v. Azar*, 976 F.3d 86, 92 (1st Cir. 2020), irreparable harm is "a necessary threshold showing," *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004); without it, the "remaining factors become matters of idle curiosity," *Doe v. Trustees of Dartmouth Coll.*, 597 F. Supp. 3d 511, 513 (D.N.H. 2022). When the government opposes

a request for injunctive relief, the balance of hardships and public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

"The party seeking the preliminary injunction bears the burden of establishing that all four factors weigh in his favor." *California v. Kennedy*, 802 F. Supp. 3d 273, 281 (D. Mass. 2025) (citing *Together Emps.*, 32 F.4th at 85).

## ARGUMENT

## I. <u>The Court Lacks Jurisdiction.</u>

### A. Plaintiffs Lack Standing.

First and foremost, this Court lacks jurisdiction because Plaintiffs here lack standing. The Court should deny Plaintiffs' motion for a preliminary injunction and request for a stay on this basis alone.

A federal court's jurisdiction is limited only to "Cases" and "Controversies." U.S. Const. art. III, § 2. A case or controversy exists only if a plaintiff meets the "three elements" of "the irreducible constitutional minimum of standing": (1) "the plaintiff must have suffered an injury in fact" "—an invasion of a legally protected interest which is "concrete and particularized," "actual or imminent" and not "conjectural" or "hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009) (quoting *Lujan*, 504 U.S. at 560). The alleged injury in fact cannot be "speculative—meaning that the injury must have already occurred or be likely to occur soon." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). If the injury has not materialized, it must be "certainly impending," and "[a]llegations of

possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).

Each plaintiff must demonstrate its own Article III standing, as "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016). And each plaintiff must also maintain its personal interest in the dispute at all stages of litigation. *See Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008). Finally, each plaintiff must demonstrate standing for each claim that it presses against each defendant, and for each form of relief that it seeks. *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion v. Ramirez.* 594 U.S. 413, 431 (2021)).

Plaintiffs are suing on behalf of themselves, for injuries they claim to have suffered due to the Broadcasts (organizational standing), and also on behalf of their members, colleges and universities, as well as DSOs who administer international student programs (associational standing). *See* Pls.' Mot. At 5.

Organizational Standing. Organizational standing requires Plaintiffs to be more than "mere bystander[s]" and instead to have a "personal stake in the dispute." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024). Organizations not directly affected by a challenged action "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. The organizational standing analysis uses the same analysis as the traditional standing inquiry. *Equal Means Equal v. Ferriero*, 478 F. Supp. 3d 105, 120 (D. Mass. 2020).

Associational Standing. Plaintiffs' main theory of standing is on behalf of their members. Associational standing requires a plaintiff to show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the

organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (quotations/citations omitted). There is accord in this Circuit: "An association has standing to sue on behalf of its members when three requisites have been fulfilled: (1) at least one of the members possesses standing to sue in his or her own right; (2) the interests that the suit seeks to vindicate are pertinent to the objectives for which the organization was formed; and (3) neither the claim asserted nor the relief demanded necessitates the personal participation of affected individuals." *United States v. AVX Corp.*, 962 F.2d 108, 116 (1st Cir. 1992).

Plaintiffs cannot establish standing under any theory. First, they have not met their burden and established that they or their members have suffered, or will suffer, a concrete, particularized injury due to the Broadcasts. The outcome here should therefore be denial of Plaintiffs' motion due to lack of standing.

Plaintiffs here are organizations that represent colleges and universities and their officials who administer international student programs. Pls.' Mot. at 5, 14-15. But they have not suffered an injury-in-fact that is "actual or imminent, not conjectural or hypothetical." *Conservation Law Found. v. EPA*, 964 F. Supp. 2d 175, 186 (D. Mass. 2013) (quoting *Lujan*, 504 U.S. at 560).

Plaintiffs complain that due to the Broadcasts they are "[t]hreatened with decertification and the potential total loss of international students" and students are "losing unique training opportunities that may not be available later." Pls. Mot. at 5. They further claim that "CPT placements need decisions imminently…" *Id.*

These complaints about the Broadcasts do not constitute an injury in fact suffered by Plaintiffs or their members. Indeed, the two Broadcasts merely remind DSOs of the requirements

for authorization of CPT training and that they comply with the regulatory requirements, i.e., authorize CPT where the training is an integral part of an established curriculum. Plaintiffs and their members can continue to authorize CPT for international students provided the training is integral to the students' chosen field of study. International students can continue to study in the United States and receive CPT provided it is necessary for the program or degree they have chosen to pursue. Thus, there has been no injury suffered by the Plaintiffs or their members when they have merely been provided with guidance on how to administer CPT and they can authorize CPT for international students when it is part of their curriculum, as permitted and limited by the regulations. Also, as demonstrated in Plaintiffs' Complaint (Compl. at 13-16), international students are also eligible for OPT, additional training not required for their degree.

International students remain eligible for CPT provided it is in compliance with the regulations, i.e., that it is an integral part of their chosen field of study. Plaintiffs here can continue making CPT placements for international students and provide them with training in compliance with the CPT regulation, as clarified by the Broadcasts. International students can continue to receive training provided it is directly related to the student's major area of study. That is precisely why international students are here in the first place, to receive training in a particular major as they have denoted in their Form I-20, whereby they agreed to complete a particular course of study. The Broadcasts clarify that CPT can be authorized if it is required for that course of study. Plaintiffs and their members can cite to no instance where an international student has been denied CPT when it was required for completion of the student's course of study.

Further, Plaintiffs fail to demonstrate that the CPT Broadcasts have been applied to any particular college or university, or to any international student for that matter. The Broadcasts do

not provide any new enforcement mechanisms and Plaintiffs can point to no enforcement action that has occurred.

At base, Plaintiffs and their members have suffered no injury in fact, the first requirement to establish standing. International students can continue to receive CPT and obtain degrees in their chosen field of study, which is why they are here. If they wish to obtain other training directly related to the student's major area of study, they can seek that under OPT.

These Plaintiffs also cannot establish traceability or redressability, also necessary to establish standing. Plaintiffs provide nothing which indicates that the Broadcasts are responsible for any negative consequences, either to them or to international students, who are presumably receiving required training in their major areas of study. International students who choose to come here to pursue education in a particular field of study can pursue CPT related to that field, and Plaintiffs can continue to authorize CPT.

Factually, these Plaintiffs do not meet the heightened injury burden at this stage in the litigation. They have failed to provide any factual evidence on how the Court will redress the alleged injury. A vacation or stay of the two Broadcasts would do nothing to redress any purported injury. The regulation is clear that CPT must be integral to the student's curriculum, and international students continue to be eligible for CPT and receive the training they need to obtain degrees in their chosen field. There is nothing for this Court to redress.

The Plaintiffs have thus failed to satisfy their Article III requirements, and their request for injunctive relief should be denied.

## II. <u>Plaintiffs Have no Likelihood of Success</u>

### A. The Broadcasts are not Final Agency Action and not Ripe for Review

The two Broadcasts at issue do not constitute final agency action required for judicial review under the APA.

Pursuant to 5 U.S.C. § 704, only "final agency action for which there is no other adequate remedy in a court" is reviewable under the APA. Agency action is final only if it satisfies two conditions: (1) the action "must mark the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature" and (2) the action determines rights or obligations or creates legal consequences. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Under *Bennett*, the critical question is whether the challenged action itself fixes rights or obligations. 520 U.S. at 177-78. And finality exists where the agency action "alter[s] the legal regime" to which the plaintiff is subject and produces binding legal effects. *Id.* at 178. This Circuit applies the *Bennett* two-part test. *See Harper v. Werfel*, 118 F. 4th 100, 116 (1st Cir. 2024) (quoting *Bennett*, 520 U.S. at 178).

The Broadcasts do not meet these requirements. There is nothing that "alters the legal regime" of CPT authorization for international students. Students remain eligible for CPT as long as the training is integral to their chosen field of study. Plaintiffs and their members retain the ability to authorize training that students need to obtain their degrees. International students can also apply for OPT if they want additional training not required for their particular area of study.

The two Broadcasts here specifically state that they are guidance and reminders concerning the authorization of CPT and are addressed to PDSOs and DSOs at SEVP certified schools. *See* Exs. A and B. Both Broadcasts contain the following disclaimer: "The Broadcast Message is not a substitute for applicable legal requirements, nor is it itself a rule or a final action by SEVP. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil or criminal matter." *Id.* Thus, the Broadcasts specifically disclaim that they are rules or final actions.

Plaintiffs cannot identify any final agency action via the two Broadcasts. The Broadcasts merely remind Plaintiffs of the requirements of the regulation pertaining to the authorization of CPT; the Broadcasts do not provide any new enforcement authority or mechanism. A reading of the two Broadcasts demonstrates that they are interpreting existing regulatory text and providing guidance and do not direct any specific new or modified action against the Plaintiffs or any individual international student. *See* Exs. A and B. Plaintiffs are therefore incorrect when they argue that the Broadcasts are final and mark "the consummation of SEVP's decision making process." Pls.' Mot. at 16.

Likewise, Plaintiffs' reliance on *Presidents' Alliance on Higher Educ. & Immig. v. Noem*, 824 F. Supp. 3d 168 (D. Mass. 2026), is misplaced. In *Presidents' Alliance*, the court determined that DHS and ICE's policy of terminating SEVIS records based on criminal database hits or visa revocations, as well as ICE's promulgation of internal guidance in the form of an internal broadcast message which listed the grounds for terminating SEVIS records, constituted final agency actions. This termination process began in 2025, when DHS undertook an effort known as the "Student Criminal Alien Initiative", and ran the names of 1.3 million students through the National Crime Information Center ("NCIC") database, which revoked visas because the students appeared in the database, "and not based on any individualized assessment of whether revocation was warranted." *Id*. at 182. ICE then terminated the SEVIS records of thousands of international students whose names appeared in the database. *Id*. at 183.

Of particular relevance to the instant case was ICE's promulgation in *Presidents' Alliance* of internal guidance through an internal broadcast message which listed specific grounds for terminating SEVIS records. According to the Court in *President's Alliance*, "[t]he Broadcast Message states that SEVP can terminate [SEVIS] records for a variety of reasons, including, but

not limited to the following reasons..." *Id*. In *President's Alliance*, plaintiffs were challenging the specific policy of terminating SEVIS records based on the NCIC hit and/or a visa revocation based on an NCIC hit; a policy that resulted in the termination of SEVIS records for thousands of F-1 students. The court found the Broadcast Message to be a final agency action separate from the SEVIS Termination Policy, as it "espouses a definitive statement of the reasons ICE may terminate a SEVIS record, some of which, like a visa revocation, extend beyond those provided in statute or regulation." *Id*. at 199.

No such analogous situation exists here. The SEVP Broadcasts here merely remind DSOs of the language of the CPT regulation, namely, that CPT can be authorized when it is integral to a student's curriculum and chosen field of study. The CPT Broadcasts merely interpret existing regulatory text and provide guidance, and in no way mark the consummation of the agency's decision-making process and do not give rise to direct and appreciable legal consequences. Thus, the Broadcasts do not satisfy either prong of the test for finality.

Since the two broadcasts at issue here are not final agency decisions but only provide guidance on an existing regulation, there is no basis for judicial review under the APA.

**B. The Broadcasts are not Arbitrary, Capricious or Otherwise not in Accordance with Law**

The issuance of the two Broadcast Messages was a proper exercise of government authority, and DHS provided reasonable and necessary reasons for their issuance. Plaintiffs' argument in their motion that the memorandum violates the APA's arbitrary and capricious standard under 5 U.S.C. § 706(2)(A) (Pls.' Mot. at 18; Compl. Count I) is without merit. An agency's decision is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or

when a reasonable explanation for the agency's decision cannot be discerned. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983). The scope of review under the "arbitrary and capricious" standard is "narrow[,]" and "a court is not to substitute its judgment for that of the agency[,]" even if it disagrees with the agency's decision. *Id*. Rather, the Court must "consider whether the decision was based on a consideration of the relevant factors" or "whether there has been a clear error of judgment." *Id*.

Courts in this District note that "reviewing agency action in the immigration arena is limited"[2], and although final agency action can be set aside when arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, "the APA does not by any means give the courts *carte blanche* to second-guess agency decisions." *Mir v. Dep't of Homeland Sec*., 2026 WL 3093227 * 9 (D. MA. Oct. 16, 2026). A reviewing court must not substitute its own judgment for the agency's but instead assesses only whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. *Id.* Here, Plaintiffs are asking this Court to substitute its judgment for that of DHS on the issue of CPT authorization and, as demonstrated above, even when there has been no final action. As noted by the Court in *Mir* when it declined a request for an injunction, "[s]uch a step would far exceed any authority the Court may have under the APA." *Id.*

DHS has been given broad authority to regulate the admission and regulation of F-1 student employment through the INA. S*ee* 8 U.S.C. § 101(a)(15)(F)(i); 8 U.S.C. § 1103(a)(1); 8 U.S.C. § 1184(a)(1). DHS has also been given authority to develop and conduct a program to collect information on F-1 students and to monitor their compliance with the terms of their status. *See* 8

---

[2] Although this matter involves F-1 nonimmigrant students, it nonetheless involves international students being granted authority to come here to pursue a particular course of study.

C.F.R. § 214.2(f); 8 U.S.C. § 1372. This authority extends to specifying the conditions by which F-1 students may engage in employment while in the United States, including CPT. *See* 8 C.F.R. § 214.2(f)(10)(i). DHS is also authorized to certify and recertify schools or to withdraw certification for noncompliance. *See* 8 C.F.R. §§ 214.3 and 214.4 respectively.

Applying the foregoing to DHS's Broadcast Messages, it is clear they are neither arbitrary nor capricious and are in accordance with law. The Broadcast Messages note that SEVP has "observed a rise in CPT authorizations that do not meet regulatory requirements, specifically those not constituting an integral part of an established curriculum." *See* Ex. A. The Broadcast Messages remind DSOs of the regulatory requirements for CPT authorization, and that CPT must be an integral part of an established curriculum and directly related to the student's major area of study. Indeed, the Broadcasts provide guidance on the authorization of CPT and refer to the very language of the regulation, which states that CPT for an F-1 student may be "authorized by the DSO to participate in a curricular practical training program that is an integral part of an established curriculum" and "directly related to the student's major area of study." Plaintiffs are therefore not likely to succeed in showing that the Broadcast Messages are arbitrary and capricious because DHS has provided a reasonable explanation for the issuance of the reminder and the guidance, and it is well within their authority. Plaintiffs will disagree given their interest in securing a more liberal regulatory reading of the requirements for CPT for international students but that does not make the Broadcast messages arbitrary, capricious, contrary to law, or otherwise in violation of the APA.

The Broadcasts clarify the plain text of 8 C.F.R. § 214.2(f)(10)(i), but rather a clarification of the regulation, which has always required that CPT be an integral part of an established curriculum. To the extent prior agency guidance was inconsistent with the regulation's text, the

agency is not obligated to perpetuate an erroneous interpretation indefinitely. The Broadcast Messages here do not make a genuine change in position. The Broadcasts merely implement the correct reading of the existing regulation, and thus no heightened justification for them is required.

If the canons of statutory construction are applied to ascertain the meaning of the existing regulation, one can look to one called "reverse ejusdem generis": When referring to "A, B, or any other C," A and B are a subset of C. *U.S. v. Williams-Davis*, 90 F.3d 490, 508 (D.C. Cir. 1996) (identifying "reverse ejusdem generis" as a canon of statutory construction). To provide another example of how this canon operates, if a rule imposes limits on fishing related to "bass, trout, or any other freshwater fish," then the restriction applies to freshwater bass like black bass, but not sea bass. *U.S. v. Delgado*, 4 F.3d 780, 786 (9th Cir. 1993) (stating that a criminal statute referring to people in "a position of organizer, a supervisory position, or any other position of management" applies to organizers and supervisors who are in a managerial position).[3]

Similarly, CPT is defined in regulation as "alternative work/study, internship, cooperative education *or any other type of required internship or practicum* that is offered by sponsoring employers through cooperative agreements with the school." 8 C.F.R. § 214.2(f)(10)(i) (emphasis added). Under the canon of reverse ejusdem generis, everything that precedes "any other type" are subsets of what follows that phrase. In other words, the definition of CPT is written so that alternative work/study, internship, and cooperative education are all to be considered as required internships or practica that are offered by sponsoring employers through cooperative agreements with the school. The Broadcasts served to remind stakeholders of this approach in the regulation.

[3] For more on "reverse ejusdem generis," *see* Jay Wexler, Fun with Reverse Ejusdem Generis, 105 Minn. L. Rev. 1 (2020).

Moreover, to the extent any alleged reliance interests exist (*see* Pls' Mot. at 21-23), they were generated by informal guidance materials — INS cables, SEVP newsletters, and DSO training materials— and those informal guidance materials do not carry the force of law, and regulated parties cannot claim legally cognizable reliance on sub regulatory guidance that contradicts the governing regulation. Any reliance on informal guidance that departed from the regulation's text was therefore not reasonable reliance warranting protection under the arbitrary-and-capricious standard.

"The APA authorizes suit by a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 61 (2004) (citation modified). "'Agency action' is defined in 5 U.S.C. § 551(13) of the APA to include 'the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'" *Id*. at 62 (citation modified). These are "circumscribed, discrete agency actions, as their definitions make clear." *Id*. But the APA does not provide for "general judicial review of [an agency's] day-to-day operations," *Lujan*, 497 U.S. at 899, like "constructing a building, operating a program, or performing a contract," *Vill. of Bald Head Island v. U.S. Army Corps. of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013). "Because an on-going program or policy is not, in itself, a final agency action under the APA, [a court's] jurisdiction does not extend to reviewing generalized complaints about agency behavior." *Cobell v. Kempthorne*, 455 F.3d 301 307 (D.C. Cir. 2006) (citation modified).

Plaintiffs here have cobbled together various memos, INS operations instructions, newsletters, and INS cables in an attempt to obtain APA review of purported arbitrary and capricious actions via the Broadcasts. Pls.' Mot. at 8-12.

Plaintiffs cannot constrain DHS's clarification of CPT authorization. Nothing in Plaintiffs' motion shows a violation of law or that the Broadcasts are arbitrary and capricious in any way. Plaintiffs and their members must simply verify that CPT training is authorized when it is necessary for an international student's course of study, pursuant to the CPT regulation.

Further, Plaintiffs' argument that the Broadcasts are impermissibly retroactive is without merit (Pls.' Mot. at 27). A review of the Broadcasts demonstrate that they are prospective interpretations of regulatory text, and are mere reminders and clarification of an existing regulation. See Exs. A and B.

Plaintiffs nitpick every aspect of Defendants' Broadcasts which merely clarify that international students can receive CPT when it is directly related to their major field of study, and an integral part of an established curriculum, seeking to restrict the government's ability to exercise its discretion when it comes to international students visiting the United States and receiving training. Our laws concerning international student visitation and training cannot work in such a manner as requested by Plaintiffs.

## III. Plaintiffs Cannot Demonstrate Irreparable Harm

Even if the Court finds that Plaintiffs have a likelihood of success on the merits, the Court should nonetheless deny the preliminary injunction because Plaintiffs have failed to establish that they will suffer irreparable harm absent preliminary relief, an independent inquiry for injunctive relief. Plaintiffs will not be irreparably harmed in the absence of a preliminary injunction because the alleged harm is not actual and imminent, but rather remote and speculative. Plaintiffs may authorize CPT for international students provided it complies with the CPT regulation.

There is a high standard to show irreparable injury. Per the Supreme Court, "[o]ur frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Resources Defense*

*Counsel, Inc*., 555 U.S. 7, 22 (2008) (emphasis in original). The burden of demonstrating irreparable harm rests squarely on the movant. *California v. Kennedy*, 802 F. Supp. 3d 273, 281 (D. Mass. 2025). Irreparable harm requires an "actual, viable, presently existing threat of serious harm." *Sierra Club v. Larson*, 769 F. Supp. 420, 422 (D. Mass. 1991). "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II v. Blinds to Go, Inc*., 370 F. 3d 151, 162 (1st Cir. 2004); *see also*, *D.F. Pray v. Nat'l Fire Ins. Co. of Hartford*, 2026 WL 523895 *3 (D. Mass. Feb. 25, 2026).

Plaintiffs argue that their members will suffer irreparable harm in that they "face the prospect of losing their ability to enroll international students and personal liability for their DSOs, all while sacrificing practical training opportunities for students…" Pls. Mot. at 38. Plaintiffs also state that "DSOs already report fearing prosecution and being chilled in the exercise of their regular responsibilities." *Id*. They further claim that "as long as the Broadcasts remain in effect, students enrolled at Plaintiffs' member institutions will lose unique, time-limited opportunities to engage in practical training." *Id*. at 39. These do not constitute "actual, viable, presently existing threat[s] of serious harm" as required by *Sierra Club*. They are mere "conjecture, surmise" and the Plaintiffs "unsubstantiated fears of what the future may have in store" as prohibited by *Charlesbank Equity.*

Likewise, Plaintiffs' claims that their members may be sanctioned with loss of SEVP certification (Pls.' Mot. at 40), that they are incurring compliance costs adhering to the standard (*id*. at 41), and that they are losing "competitive position and good will" (*id*. at 42), are all non-starters for a claim of irreparable harm.

Plaintiffs ignore the fact that, pursuant to the Broadcasts, their members may indeed authorize CPT for international students provided it is required for their course of study. Thus, Plaintiffs' members can authorize CPT, and international students will be able to receive it, provided it is directly related to the students' major area of study. That is not an onerous requirement or the imposition of any significant irreparable harm. The international students are here at the behest of the United States to receive training in a specific field that they have identified, and Plaintiffs' members can provide them with CPT which is an integral part of an established curriculum and directly related to their fields of study. Plaintiffs' members authorize CPT and the international students receive necessary training. There is no irreparable harm here.

## IV. <u>The Balance of Equities and the Public Interest Favor the Government</u>

Granting the preliminary injunction requested by Plaintiffs would be contrary to the public interest. The balance of harms and the public interest elements of the injunctive relief test merge when the Government is the opposing party, *Nken v. Holder*, 556 U.S. 418, 435 (2009), and courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982). Courts "explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1302, 1305 (1991). Here, the balance of equities and public interest tip decisively in Defendants' favor.

Plaintiffs' motion ignores, and fails to even acknowledge, the substantial government interest in DHS oversight and regulation of students here on F-1 visas, and the education and training they receive. As stated in Broadcast 2 issued on August 24, 2026, "SEVP has observed a rise in [CPT] authorizations that appear to violate regulatory requirements" and that "[a]ccurate and timely reporting by schools and students allows SEVP to manage [SEVIS], a critical tool in SEVP's mission to protect national security and ensure the integrity of the nation's educational

and cultural exchange programs." Ex. B at 1. As stated in Section II.B above, DHS has been given broad authority to regulate the admission and regulation of F-1 student employment through the INA. S*ee* 8 U.S.C. § 101(a)(15)(F)(i). DHS has also been given authority to develop and conduct a program to collect information on F-1 students and to monitor their compliance with the terms of their status. *See* 8 C.F.R. § 214.2(f). This authority extends to specifying the conditions by which F-1 students may engage in employment while in the United States, including CPT. *See* 8 C.F.R. § 214.2(f)(10)(i).

As explained throughout this opposition, the Broadcast Messages at issue merely remind the DSOs that CPT can be authorized when it is an integral part of an established curriculum and directly related to the international student's program of study. Enjoining enforcement of the Broadcasts is contrary to the public interest as it would interfere with the inherent authority of DHS and SEVP to oversee and regulate F-1 student employment and to issue interpretive guidance explaining how existing regulations apply to DSOs and participating schools. At base, international students here on F-1 status are eligible for CPT provided it is an integral part of an established curriculum and directly related to their major area of study and Plaintiffs' members can authorize it. The Broadcasts confirm this.

Plaintiffs' argument that the equities and public interest favor the issuance of a preliminary injunction (Pls' Mot. at 42-44) is without merit. While Plaintiffs assert that "[t]housands of students engage in CPT annually" and will lose training opportunities, *id*. at 42-43, they continue to ignore the fact that students will continue to engage in CPT each year provided it is an integral part of an established curriculum and directly related to their field of study as the regulation requires.

The public interest favors lawful and reasonable oversight and management of the admission of foreign students for academic study in this country via the F-1 visa process. The Broadcasts do that and executive authority in the area should not be infringed as requested by Plaintiffs.

## V. <u>The Broadcasts are not Legislative Rules Subject to Notice and Comment</u>

The two Broadcasts are not legislative rules that required notice and comment prior to their issuance. Plaintiffs are incorrect when they argue otherwise. Pls.' Mot. at 36-38.

The APA requires notice and comment rulemaking and an opportunity for public comment only for legislative or substantive rules, i.e., those that create rights, assign duties, or impose obligations, the basic tenor of which is not already outlined in the law itself. *N.H. Hosp. Ass'n v. Azar*, 887 F. 3d 62, 70 (1st Cir. 2018) (quoting *La Casa Del Convaleciente v. Sullivan*, 965 F. 2d 1175, 1178 (1st Cir. 1992). Interpretive rules and general statements of policy are expressly exempt from notice and rulemaking requirements. 5 U.S.C. § 553(b)(A). This Circuit has recognized that an agency's own characterization of its action as interpretive is an important factor. *Warder v. Shalala*, 149 F. 3d 73, 80 (1st Cir. 1998). An administrative ruling is an interpretive rule and thus exempt from notice and comment procedures where it merely clarifies an ambiguity in existing law and is not inconsistent with existing law. *Id*. at 80. Further, an administrative rule is interpretive and not subject to notice and comment when it does not effect a substantive change in the regulations. *Id.*

The D.C. Circuit applies a four-factor test to determine if a rule is legislative or not and is instructive. *Truckers United for Safety v. Fed. Highway Admin*., 139 F.3d 934 (D.C. Cir. 1998). A rule is legislative if (1) in the absence of the rule there would be no adequate legislative basis for enforcement; (2) the agency published the rule in the CFR; (3) the agency explicitly invoked

its general legislative authority; or (4) the rule effectively amends a prior legislative rule. *Id.* 938-39.

The CPT Broadcasts satisfy none of the four *Truckers United* factors. First, 8 C.F.R. § 214.2(f)(10)(i) already provides the legislative basis for any enforcement action against a school that authorizes CPT outside the regulatory definition; the Broadcasts add nothing to that authority. Second, the Broadcasts are not published in the Code of Federal Regulations. Third, SEVP did not invoke its general legislative rulemaking authority; the Broadcasts refer to the existing regulation and disclaim rulemaking status. Fourth, the Broadcasts do not amend § 214.2(f)(10)(i)—they interpret it. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) (interpretive rules are issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers and do not have the force and effect of law). The Broadcasts do not create new rights or obligations. Instead, they clarify the meaning of integral part of an established curriculum as those terms already appear in the regulation.

Further, the CPT Broadcasts do not create any new duty or obligation; the requirements that CPT be an "integral part of an established curriculum" and that it be "directly related to the student's major area of study" are already in the regulation. The Broadcasts merely explain what that requirement means and remind DOSs of when CPT can be authorized per the regulation. The Broadcasts are clearly consistent with the regulatory text and do not constitute substantive legislative rulemaking subject to notice and comment.

## VI. <u>The Court Should Neither Stay nor Enjoin the Broadcasts</u>

Per the foregoing discussion, a stay of the two Broadcasts is not warranted and Plaintiffs' request for an injunction should be denied.

The issuance of the Broadcasts was a lawful exercise of DHS authority and reminded DSOs of the regulation concerning the authorization of CPT and issued reasonable guidance on the topic.

Plaintiffs' members remain free to authorize CPT for international students here on F-1 status as long as the training is an integral part of an established curriculum and directly related to their area of study. There is no need for the issuance of a stay or an injunction under these circumstances.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for a preliminary injunction and a stay.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: October 28, 2026

By: */s/ Thomas W. Duffey*
THOMAS W. DUFFEY
Assistant United States Attorney
U.S. Attorney's Office
1 Courthouse Way, Ste. 9200
Boston, MA 02210
(617) 748-3216
Thomas.duffey@usdoj.gov

**LOCAL RULE 7.1 CERTIFICATION**

I certify that the parties conferred and were unable to resolve or narrow the issues presented by this motion.

*/s/ Thomas W. Duffey*
THOMAS W. DUFFEY
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Thomas W. Duffey*
THOMAS W. DUFFEY

Assistant U.S. Attorney