**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ASSOCIATION OF AMERICAN UNIVERSITIES; PRESIDENTS' ALLIANCE ON HIGHER EDUCATION AND IMMIGRATION; ASSOCIATION OF INDEPENDENT COLLEGES AND UNIVERSITIES IN MASSACHUSETTS; and NAFSA: ASSOCIATION OF INTERNATIONAL EDUCATORS,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Case No. 1:26-cv-14520<br><br>**(Leave to file granted on October 30, 2026)** |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION AND STAY OF AGENCY ACTION**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................................................................................ ii

ARGUMENT ..............................................................................................................................1

I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ....................................1

A. The Broadcasts Establish a New Policy Regarding CPT.......................................1

B. Plaintiffs Have Standing to Challenge the Broadcasts. ..........................................3

C. The Broadcasts Are Final Agency Action. ............................................................5

D. The Broadcasts Are Arbitrary & Capricious (Count I)...........................................7

E. The Broadcasts Are Impermissibly Retroactive (Count II). .................................10

F. The Broadcasts Violate the Regulation (Count III). ............................................11

G. The Broadcasts Are Legislative Rules That Were Issued Without Notice-and-Comment Rulemaking (Count IV). ..............................................................12

II. PLAINTIFFS' MEMBERS WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF ......................................................................13

III. THE EQUITIES AND THE PUBLIC INTEREST FAVOR PLAINTIFFS ....................14

IV. THE COURT SHOULD STAY THE BROADCASTS AND ENJOIN ENFORCEMENT OF THEIR STATED POLICY ..........................................................14

CONCLUSION ..........................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Appalachian Power Co. v. EPA*, 208 F.3d 1015 (D.C. Cir. 2000) ....................7

*Azar v. Allina Health Services*, 587 U.S. 566 (2019) ....................12

*Bennett v. Spear*, 520 U.S. 154 (1997) ....................6

*Bonacci v. TSA*, 909 F.3d 1155 (D.C. Cir. 2018) ....................4

*Commonwealth v. Trump*, 836 F. Supp. 3d 385 (D. Mass. 2026)....................7

*Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1 (2020)....................8, 9

*Doe v. Trump*, 157 F.4th 36 (1st Cir. 2025), *cert. denied*, 146 S. Ct. 2810 (2026) ....................13, 15

*Doe v. Trump*, 2026 WL 1170971 (D. Mass. Apr. 30, 2026) ....................6

*Duke Energy Progress, LLC v. FERC*, 106 F.4th 1145 (D.C. Cir. 2024)....................8

*FEC v. Cruz*, 596 U.S. 289 (2022).................... 3-4

*Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982) ....................2

*Housatonic River Initiative v. United States EPA*, 75 F.4th 248 (1st Cir. 2023)....................3

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994)....................10

*Lantheus Medical Imaging, Inc. v. Zurich American Insurance Co.*, 255 F. Supp. 3d 443 (S.D.N.Y. 2015) ....................12

*Lockhart v. United States*, 577 U.S. 347 (2016) ....................12

*Louisiana v. United States Department of Energy*, 90 F.4th 461 (5th Cir. 2024) ....................8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................4

*Moser v. United States*, 341 U.S. 41 (1951) ....................9

*New Hampshire Hospital Ass'n v. Azar*, 887 F.3d 62 (1st Cir. 2018)....................12, 13

*Presidents' Alliance on Higher Education & Immigration v. Noem*, 824 F. Supp. 3d 168 (D. Mass. 2026)....................6, 7

*Presidents' Alliance on Higher Education & Immigration v. United States Department of Homeland Security*, 2026 WL 2690098 (D. Mass. Sept. 14, 2026), *appeal docketed*, No. 26-2112 (1st Cir. Oct. 1, 2026)....................15

*Safe Food & Fertilizer v. EPA*, 350 F.3d 1263 (D.C. Cir. 2003) ....................11

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) ....................8, 9, 11

*Somerville Public Schools v. McMahon*, 139 F.4th 63 (1st Cir. 2025)....................14

*Souza v. City of Fitchburg*, 826 F. Supp. 3d 244 (D. Mass. 2026) ....................9

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)....................5

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) ....................11

*United States Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590 (2016) ....................7

*United States v. Stevens*, 559 U.S. 460 (2010)....................10

*Whitman v. American Trucking Associations*, 531 U.S. 457 (2001) ....................10

*Woonasquatucket River Watershed Council v. United States Department of Agriculture*, 186 F.4th 25 (1st Cir. 2026) ....................9, 15

**STATUTES**

5 U.S.C. § 705....................14, 15

**OTHER AUTHORITIES**

8 C.F.R. § 214.2(f)(10)(i)....................11, 15

9 FAM 402.5-5(N)(4) ....................3

9 FAM 402.5-5(N)(3) ....................3

56 Fed. Reg. 27,211 (June 13, 1991) ....................2

56 Fed. Reg. 55,608 (Oct. 29, 1991)....................12

SEVP, *Training for Designated School Officials*, https://web.archive.org/web/20140823202052/http:/www.ice.gov/doclib/sevis/pdf/SEVP_DSO_Training.pdf (capture of Aug. 23, 2014)....................2

Jay Wexler, *Fun with Reverse* Ejusdem Generis, 105 Minn. L. Rev. 1 (2020)....................12

This lawsuit challenges the government's sudden and unexplained reversal of a thirty-five-year-old policy. Prior to August 2026, schools could authorize international students to pursue curricular practical training ("CPT") when they received academic credit but the training was not required. Following two agency "Broadcasts," that option is no longer available.

The government's Opposition ("Opp.") does not defend that change. Instead, it denies there was one, insisting repeatedly that the Broadcasts "merely remind" school officials of CPT requirements. Opp. 10-11, Doc. No. 27. But labeling a new policy a "reminder" does not make it so. And the text, structure, and history of the governing CPT rule say otherwise, as do the fifteen declarations describing the impacts of the government's new policy on institutions, their officials, and their students. The government ignores the 1991 rulemaking—which clearly established that elective, for-credit training may be authorized as CPT—as well as the decades of agency guidance and resulting university reliance on it. And the government's concession that the Broadcasts apply only prospectively confirms the reality: a policy that operates only going forward is a new policy.

Defendants are silent on nearly everything else. They offer no answer—or only perfunctory answers—to Plaintiffs' arguments that the new policy violates the Administrative Procedure Act ("APA"). And they never even acknowledge, let alone discuss, Plaintiffs' declarations—describing lost internships, cancelled courses, administrative confusion, and college and university officials working under threat of criminal liability—demonstrating irreparable harms from the new policy. The Court should stay the Broadcasts and enjoin enforcement of their unlawful new policy.

## ARGUMENT

### I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

#### A. The Broadcasts Establish a New Policy Regarding CPT.

The government's entire Opposition rests on the premise that the Broadcasts do nothing

new. It asserts that they "merely remind DSOs of the requirements for authorization of CPT training," and that there has been no injury, no final agency action, and no APA violation, because institutions "can continue to authorize CPT for international students provided the training is integral to the students' chosen field of study." Opp. 10-11, 13 ("There is nothing that 'alters the legal regime' of CPT authorization[.]"), *id.* at 18 (Broadcasts "do not make a genuine change in position"). But the persistent refrain that there is nothing to see here rings hollow.

For decades, the government's position has been that a training opportunity qualifies as CPT if either: (1) students earn academic credit for it; or (2) if not taken for credit, the school requires it for the student's degree. Mem. 9-11, 19-20, Doc. No. 9-1. The government unambiguously adopted that position when it issued the governing regulation in 1991. *See* 56 Fed. Reg. 27,211, 27,212 (June 13, 1991) (CPT encompasses training "for which students are awarded academic credits"). And it has affirmed that policy repeatedly in the decades since, in cables, trainings, and other agency guidance. *See, e.g.*, SEVP, *Training for Designated School Officials* at 48, https://web.archive.org/web/20140823202052/http:/www.ice.gov/doclib/sevis/pdf/SEVP_DSO_Training.pdf (capture of Aug. 23, 2014) ("'integral part of an established curriculum' means an opportunity must be required by the curriculum or, if not required, the student must receive credit for the training").[1] Plaintiffs' members have accordingly long understood both of those pathways to CPT eligibility to be permitted. *See, e.g.*, AAU Decl. ¶ 12, Doc. No. 8-1; PA Decl. ¶ 12, Doc. No. 8-2; Wisconsin Decl. ¶ 10, Doc. No. 8-15. In the decades after the Broadcasts were

---

[1] The government seeks to deny the former policy by accusing Plaintiffs of "cobbl[ing] together various" agency documents. Opp. 19. But it does not dispute that the cited documents articulate a policy in direct conflict with the Broadcasts. Nor does it address the preamble to the 1991 rulemaking record, which cannot be discounted as mere sub-regulatory guidance. *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 158 (1982) ("Any ambiguity in [regulation's] language [was] dispelled by the preamble accompanying and explaining the regulation.").

issued, colleges and universities regularly authorized CPT for internships and other training for which a student received academic credit, even if it was not mandatory for the student's degree. *See, e.g.*, UPenn Decl. ¶ 4, Doc. No. 8-12; AICUM Decl. ¶¶ 7-8, Doc. No. 8-3; UIUC Decl. ¶ 16, Doc. No. 8-10; Grinnell Decl. ¶¶ 6-7, Doc. No. 8-9. By contrast, the Broadcasts state that training qualifies for CPT only if it is required of every student in a degree program. Compl. Ex. A, Doc. No. 1-1, at 2 ("Ex. A") (CPT permissible only "if its absence would make the attainment of a degree an impossibility"); Compl. Ex. B, Doc. No. 1-2, at 2 ("Ex. B").[2] As the declarations make clear, the government's reversal is both clear and consequential.

**B. Plaintiffs Have Standing to Challenge the Broadcasts.**

Each Plaintiff has standing to bring this suit on behalf of its members. Mem. 16 n.8.[3] The government does not contest that Plaintiffs satisfy the germaneness and participation requirements of associational standing. *See Housatonic River Initiative v. U.S. EPA*, 75 F.4th 248, 264-66 (1st Cir. 2023). It claims only that Plaintiffs' members lack standing to sue—that "there has been no injury" because "members can continue to authorize CPT for international students provided the training is integral to the students' chosen field of study." Opp. 10-12. But that argument rests on the flawed premise outlined above: that the Broadcasts did not alter the legal framework for CPT.[4]

---

[2] The government's only ostensible support for their restrictive interpretation comes from an agency with no authority to implement or enforce CPT. Opp. 5 (citing the State Department's Foreign Affairs Manual or "FAM"). But even that document does not provide the support the government claims—stating only that CPT involves required training "[i]n *most* cases," not all cases. 9 FAM 402.5-5(N)(4) (emphasis added). The document nowhere says training must be required of all students in a program to qualify as CPT. *Cf id.* 402.5-5(N)(3) (describing work/study courses as CPT-eligible when "part of the curriculum").

[3] Because associational standing exists, the Court need not reach organizational standing.

[4] Implicit in the government's standing analysis is its view that no longer authorizing elective for-credit training as CPT is not a real injury because it was never permissible. But "[f]or standing purposes, we accept as valid the merits of [plaintiffs'] legal claims," *FEC v. Cruz*, 596 U.S. 289,

Standing here is clear because Plaintiffs' members are directly regulated by the Broadcasts. The Broadcasts are expressly directed to "DSOs at SEVP-certified schools." Ex. A at 1. They define the standards that DSOs and institutions must apply in authorizing CPT and subject "both the institution and individual DSO[s]" to "[p]otential liability" for non-compliance, *id.*, thereby directly regulating them. Where a plaintiff is "an object of the action . . . at issue," "there is ordinarily little question" that the action has "caused him injury." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992); *Bonacci v. TSA*, 909 F.3d 1155, 1159-60 (D.C. Cir. 2018) (same).

Far from "provid[ing] nothing which indicates that the Broadcasts are responsible for any negative consequences," Opp. 12, Plaintiffs offered fifteen declarations, each identifying concrete injuries suffered by schools, DSOs, and students. Because of the Broadcasts, institutions and DSOs have stopped authorizing CPT for elective opportunities, withdrawn prior CPT authorizations for upcoming training, and otherwise suffered numerous concrete injuries stemming from the new policy. Mem. 13-15; NAFSA Decl. ¶¶ 11-13, Doc. No. 8-4; AAU Decl. ¶ 15-16; PA Decl. ¶¶ 12-19, 21; AICUM Decl. ¶ 9. For instance, Columbia University, an AAU and Presidents' Alliance member, has had to deny CPT authorization to over 120 international students due to the Broadcasts and has been inundated with student inquiries and other administrative burdens because of them. Columbia Decl. ¶¶ 6-7, Doc. No. 8-5; *see also, e.g.*, Cornell Decl. ¶¶ 12, 23, Doc. No. 8-6; Wisconsin Decl. ¶¶ 25, 33, 36; UIUC Decl. ¶ 22; MSU Decl. ¶ 7.1, Doc. No. 8-11. Grinnell College, a President's Alliance member, previously authorized CPT through a credit-bearing internship course and can no longer do so, because Grinnell does not require practical training for any degree program. Grinnell Decl. ¶¶ 6-9; *see also* WashU Decl. ¶¶ 7 Doc. No. 8-14 (prior to the

---

298 (2022), which here means that, contrary to the government's theory, non-mandatory, for-credit CPT was previously allowed.

Broadcasts, all WashU schools offered CPT-eligible opportunities; after the Broadcasts, only three WashU schools have CPT-eligible programs).[5]

Traceability and redressability exist for the same reason: Plaintiffs' members halted authorizations because of the Broadcasts, and the relief requested would allow Plaintiffs' members to resume authorizing CPT under the standard that governed for decades without fear of sanction. *See* AAU Decl. ¶ 25; NAFSA Decl. ¶ 21; PA Decl. ¶ 23; MSU Decl. ¶ 9.[6]

Finally, the government's argument that Plaintiffs have no standing because the Broadcasts have not been enforced or "applied to any particular college," Opp. 11-12, gets both the law and the facts wrong. The Supreme Court has long held that an "enforcement action is not a prerequisite to challenging" government action—a credible threat of enforcement is itself adequate. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014). And the Broadcasts themselves include such a threat, Ex. A at 1 ("Improper CPT authorization . . . may subject both the institution and individual DSO[s] to administrative or legal consequences.")—one that is already impacting Plaintiffs' members, as described above, and their DSOs. *E.g.*, MSU Decl. ¶ 7.2; UIUC Decl. ¶ 26. Nor does the government respond to the evidence that DHS has already begun applying the new standard. *See* NAFSA Decl. ¶ 20.

**C. The Broadcasts Are Final Agency Action.**

Because the Broadcasts established a new binding policy, *see supra* Section I.A, the final

[5] The suggestion that if students "wish to obtain other training . . . they can seek that under OPT," Opp. 12, ignores the reasons why OPT is not an adequate alternative, including that it requires USCIS approval, a lengthy and uncertain process making it ill-suited to the kinds of training programs previously authorized under CPT. *See* Mem. at 7, 24-25; AAU Decl. ¶ 18; UIUC Decl. ¶ 38; MSU Decl. ¶ 7.1.4; Cornell Decl. ¶¶ 18-21; Wisconsin Decl. ¶¶ 39-41; Grinnell Decl. ¶ 14.

[6] Indeed, the government's insistence that "[a] vacation [*sic*] or stay of the two Broadcasts would do nothing to redress any purported injury" because "[t]he regulation is clear," Opp. 12, underscores the need for injunctive relief as well as a § 705 stay. *See infra* Section IV.

agency action question here is easy. The Broadcasts adopted a new standard and warned of consequences for departing from it, and thus "alter[ed] the legal regime" for regulated entities—that is final agency action subject to APA review. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). DHS cannot escape judicial review just because it framed the Broadcasts as "reminder[s]."

*First*, the government does not argue that the Broadcasts' announced policy is interim or temporary, or will be followed by further guidance, nor does it point to any agency document indicating as much. *See Doe v. Trump*, 2026 WL 1170971, at *5 (D. Mass. Apr. 30, 2026). Thus, the Broadcasts "mark the consummation of the agency's decisionmaking process." *Bennett*, 520 U.S at 177-78 (citation omitted).

*Second*, before the Broadcasts, DSOs could—and regularly did, *see, e.g.*, UPenn Decl. ¶¶ 4, 8; Vanderbilt Decl. ¶¶ 7–8, Doc No. 8-13—authorize CPT for elective internships taken for credit. Now DSOs must deny such requests. That is a change in legal regime. *Bennett*, 520 U.S. at 177-78. And it had "direct and appreciable legal consequences." *Doe*, 2026 WL 1170971, at *7 (citation omitted). The change was backed with threats of "administrative or legal consequences," including potential loss of SEVP certification for schools and personal criminal liability for DSOs. Ex. A at 1. The practical effect was immediate; for example, CPT approvals across the University of Wisconsin have fallen 60%, almost entirely because of the Broadcasts. Wisconsin Decl. ¶ 36; *see also, e.g.*, Cornell Decl. ¶ 23; Grinnell Decl. ¶ 9.

The government also cannot distinguish *Presidents' Alliance on Higher Education & Immigration v. Noem*, 824 F. Supp. 3d 168 (D. Mass. 2026), by arguing that the broadcasts there were final because they announced grounds for terminating a student's SEVIS record that "extend beyond those provided in statute or regulation." *Id.* at 199; Opp. 15. Here, too, the Broadcasts "interpret existing regulatory text" (Opp. 15) in a "definitive statement" that extends beyond the

regulation, by eliminating one of the two CPT pathways permitted by regulation for years. *President's Alliance*, 824 F. Supp. 3d at 199. And because, unlike in *Presidents' Alliance*, these Broadcasts *do* use "mandatory language," *id.*; *e.g.*, Ex. B at 1 ("where an elective course is optional, . . . required aspects of CPT would not be met."), and *are* already being implemented, *e.g.*, NAFSA Decl. ¶ 20; Wisconsin Decl. Ex. A, it is even clearer that they are final.

Finally, the government invokes the Broadcasts' disclaimers, Opp. at 13, but finality turns on an action's substance, not the label the agency gives it. *See Commonwealth v. Trump*, 836 F. Supp. 3d 385, 415 (D. Mass. 2026) ("[A]n agency's characterization of its own action is not dispositive."); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022-23 (D.C. Cir. 2000) (final agency action despite "boilerplate" disclaimer of legal effect). The Broadcasts "dictate[]" that only mandatory training programs are eligible for CPT, *Appalachian Power Co.*, 208 F.3d at 1023, and "warn[]" schools that if they authorize CPT for previously eligible elective, for-credit opportunities, "they do so at the risk of significant criminal and civil penalties." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 600 (2016). They are thus final and reviewable.

### D. The Broadcasts Are Arbitrary & Capricious (Count I).

Because its Opposition is largely an effort to recast as fiction the fact that the Broadcasts constitute a change in policy, the government fails to address each of the independent reasons that this change is arbitrary and capricious, any one of which would supply a sufficient basis to find the Broadcasts unlawful. Besides denying the effect of the Broadcasts, DHS argues that it has "discretion when it comes to international students." Opp. 20. But even if that were true, the agency still must comply with the APA when exercising its discretion, as even the government acknowledges. *Id.* Its failure to do so here renders the Broadcasts unlawful on multiple grounds.

***Defendants departed from their longstanding position without acknowledgment or explanation.*** The government's Opposition never addresses the preamble and history of the 1991

rule. *See Duke Energy Progress, LLC v. FERC*, 106 F.4th 1145, 1154 (D.C. Cir. 2024) ("Language in the preamble of a rule … can 'establish rights and obligations or create binding legal consequences[.]'"). And as noted above, *supra* note 1, the government does not dispute that the cited documents articulate a policy in direct conflict with the Broadcasts. In its one veiled acknowledgement of the change in policy, the government argues that even if the agency has changed position, it "is not obligated to perpetuate an erroneous interpretation [of the regulation] indefinitely." Opp. 17-18. But it is the Broadcasts, not the prior policy, that contradicts the regulation. *See infra* Section I.F. In any event, the APA's requirement of reasoned decisionmaking applies to a change even when an agency claims its prior policy is now unlawful. *See, e.g.*, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 8-9, 24-30 (2020); *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 476 (5th Cir. 2024). The Broadcasts also do not say the prior policy was based on an erroneous interpretation or that they are meant to correct that error, so that rationale (even if true) could not be used to defend them. *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) (agency action "must be judged" on grounds "the record discloses that [it] was based").

***The Broadcasts fail to justify the government's change in position.*** Beyond the supposed illegality of its thirty-five-year-old policy, the government also points to the Broadcasts' statements about a "rise in CPT authorizations that do not meet regulatory requirements." Opp. 17 (quoting Ex. A at 1). But the government never responds to Plaintiffs' argument for why this justification fails. Mem. 26-27. If the allegedly improper authorizations referenced in the Broadcasts were inconsistent with the old policy because they were neither for-credit nor mandatory, eliminating for-credit opportunities would not solve that problem.[7] Ultimately, neither

[7] If, by "regulatory requirements," the Broadcasts mean the new policy, this rationale is a non-explanation; a "rise" in CPT authorizations for elective, for-credit training is not, in and of itself,

the Broadcasts nor the Opposition connect the alleged rise to the old policy, let alone explain how abuses of the CPT program would be addressed by narrowing a pathway of permissible CPT.

***The Broadcasts ignore serious reliance interests.*** The government does not contest that the Broadcasts failed to address reliance interests, Mem. 21-24, but instead claims that such interests are not "legally cognizable" because they "were generated by informal guidance materials," Opp. 19. The reliance interests here, however, were based not only on sub-regulatory guidance, but also a position that the government established by regulation in 1991. And principles of "elementary fairness" require that members of the public be entitled to rely on official pronouncements from an agency without fear of future liability or sudden reversal. *Moser v. United States*, 341 U.S. 41, 47 (1951); *cf. Regents*, 591 U.S. at 24 (the government should "turn square corners in dealing with the people" (citation omitted)). DHS was thus obliged to assess Plaintiffs' reliance interests before changing its position. *Regents*, 591 U.S. at 30-31; *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 186 F.4th 25, 45-46 (1st Cir. 2026).

***The Broadcasts fail to consider important aspects of the problem.*** Because they pretended not to announce a new CPT policy, the Broadcasts ignored important aspects of the old policy, including the reasons that flexibility can be important in designing degree programs, and the practical effect of foreclosing training opportunities for international students. Mem. 24-26. The government fails to address the first issue entirely, thereby conceding the Broadcasts' irrationality in this respect. *See Souza v. City of Fitchburg*, 826 F. Supp. 3d 244, 252-53 (D. Mass. 2026). And while it argues that international students may access practical training through OPT, Opp. 4 n.1, 11-12, that rationale is absent from the Broadcasts themselves, *Chenery Corp.*, 318 U.S. at 87-88,

---

a reason to eliminate that CPT pathway. The government must *explain why* a rise in lawful CPT authorizations justifies a change in the legal requirements for CPT.

and ignores the many ways OPT is an inadequate alternative to CPT. *See supra* note 5.

**E. The Broadcasts Are Impermissibly Retroactive (Count II).**

The government apparently concedes that the Broadcasts cannot be applied retroactively. Opp. 20. And it nowhere contests that the Broadcasts would violate "[e]lementary considerations of fairness" if they penalized past CPT authorizations that complied with the government's position at the time. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994); *see* Mem. 27-29.

Nevertheless, the government's denial that it has adopted a new policy confirms that an injunction against retroactive application remains necessary. Although it asserts that the Broadcasts "are prospective interpretations of regulatory text," Opp. 20, the government then contradicts itself in the very same sentence, insisting that they are "reminders and clarification of an existing regulation." *Id.* Both cannot be true: If the government's position is that the Broadcasts merely restate an existing standard, it can offer no assurance that they will not be enforced against conduct that predates them. But if the Broadcasts are instead "prospective," that amounts to a concession that the rules have changed, and cannot be applied to past conduct.

At a minimum, the government has not sufficiently disavowed retroactive enforcement of the Broadcasts' interpretation. Courts need not credit the government's promise to "use … responsibly" otherwise unlawful authority or leave those subject to that authority "at the mercy of *noblesse oblige*." *United States v. Stevens*, 559 U.S. 460, 480 (2010); *cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 473 (2001) (declining to rely on "agency's voluntary self-denial" of unlawful exercise of authority). Given the serious sanctions that will attach to those who authorized CPT under the prior policy, the government must do more to disclaim any retroactive intent. And its single sentence about "prospective interpretations," Opp. 20, does not acknowledge or dispute the evidence suggesting that DHS is *already* applying the new policy to evaluate the legality of *past* CPT approvals, NAFSA Decl. ¶ 20. Because retroactive enforcement of the Broadcasts is legally

impermissible, the Court should grant relief against their retroactive application.

**F. The Broadcasts Violate the Regulation (Count III).**

The government does not dispute that if the Broadcasts contravene or contradict the governing CPT regulation, they must be set aside as contrary to law. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954). Though correct that the regulation "has always required that CPT be an integral part of an established curriculum," Opp. 17, the government cannot support its view that training is "integral" only if required of all students in a program. The government utterly fails to respond to Plaintiffs' extensive textual, historical, and structural arguments about why "integral" is best read as including for-credit, elective opportunities. *See* Mem. 29-35. And it does not rely on or even cite the only definition of "integral" the Broadcasts themselves offered, disregarding the basic principle that agency action must be upheld, if at all, only on the basis proffered by the agency. *Chenery Corp.*, 318 U.S. at 87-88.

The only interpretive argument the Opposition offers is one nowhere mentioned in the Broadcasts, the regulation, or any other agency document: "reverse ejusdem generis," Opp. 18, a "principle occasionally invoked" by some courts (though not this one or the First Circuit) under which "the phrase 'A, B, or any other C' indicates that A is a subset of C." *Safe Food & Fertilizer v. EPA*, 350 F.3d 1263, 1269 (D.C. Cir. 2003) (citation omitted). The regulation defines CPT as "alternative work/study, internship, cooperative education or any other type of required internship or practicum," 8 C.F.R. § 214.2(f)(10)(i), and the government argues that "required" in the final provision must modify "work/study, internship, [and] cooperative education."

There are at least two reasons this argument does not work. First, the form of this list is not "A, B, or any other C," with "C" including a subtype of "A" and "B." It is "A, B, C, or D," because the final clause here is not a broader catch-all, but rather an *additional* category. If "required" instead limited the preceding items, the earlier "internship" would be superfluous. The better

reading is that the term "required" modifies only the last item in the list. *See Lockhart v. United States*, 577 U.S. 347, 351-52 (2016) (under "rule of the last antecedent," adjective before a final clause in a list modifies only the last clause (citation omitted)). Second, the preamble of the rule (ignored by the government) confirms that the final item was added as an additional CPT pathway, not to narrow the preceding items. Mem. 9-10, 34; 56 Fed. Reg. 55,608, 55,611 (Oct. 29, 1991) (last clause added to "*broaden* the definition of curricular practical training to include these types of non-credit training programs" in response to comments (emphasis added)); *cf.* Jay Wexler, *Fun with Reverse* Ejusdem Generis, 105 Minn. L. Rev. 1, 22 (2020) ("contextual clue or piece of legislative history" can defeat reverse ejusdem generis). The government cannot twist this language to fit an obscure interpretive principle that does not account for the repeated use of "internship" in the list or the rulemaking history. *See Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 460 (S.D.N.Y. 2015) (refusing to apply reverse ejusdem generis where enumerated items could not reasonably be interpreted as a subset of the alleged catch-all).

### G. The Broadcasts Are Legislative Rules That Were Issued Without Notice-and-Comment Rulemaking (Count IV).

The government argues that notice-and-comment rulemaking was not required here because the Broadcasts are "[i]nterpretive rules and general statements of policy." Opp. 24. But it acknowledges that a rule is legislative if it "effectively amends a prior legislative rule." *Id.* at 24-25. That is exactly what the Broadcasts have done: They announced a new policy "inconsistent with another rule having the force of law"—the CPT regulation. *N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 73 (1st Cir. 2018) (quoting *Warder v. Shalala*, 149 F.3d 73, 81 (1st Cir. 1998)); Mem. 36-38. And by threatening institutions and DSOs with sanctions for failure to comply, the Broadcasts establish a legislative rule with the "force and effect of law," *Azar v. Allina Health Servs.*, 587 U.S. 566, 573 (2019) (citation omitted), not a mere interpretation of the CPT regulation.

Even if the Broadcasts were "consistent with the regulatory text," Opp. 25, that would not make them interpretive, because in establishing the new policy, DHS chose among "materially different policy options that alter or enlarge existing obligations." *N.H. Hosp. Ass'n*, 887 F.3d at 73.

## II. PLAINTIFFS' MEMBERS WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF

Absent injunctive relief, Plaintiffs' members and their students will continue to suffer irreparable harm. Mem. 38-42; *supra* Section I.B. The government dismisses these harms as reflecting "mere 'conjecture, surmise,'" and "unsubstantiated fears of what the future may have in store." Opp. 21 (citation omitted). But the Broadcasts themselves make clear that institutions and DSOs that follow the regulation as written risk severe sanctions. And Plaintiffs submitted fifteen declarations establishing that the harms asserted are not merely likely but certain, because they are happening right now. As long as the Broadcasts remain in effect, students enrolled at Plaintiffs' member institutions will continue to lose unique training opportunities. Mem. 39. Institutions will incur unrecoverable compliance costs and suffer reputational harm, as students choose to study elsewhere and as relationships with employer partners are strained. *Id.* at 41-42. And DSOs will continue to suffer from threats of serious personal and professional consequences. *Id.* at 40. Plaintiffs' wholly unrebutted declarations are more than sufficient to establish irreparable harm at this stage. *Doe v. Trump*, 157 F.4th 36, 80 (1st Cir. 2025), *cert. denied*, 146 S. Ct. 2810 (2026).

The government summarily dismisses several of these injuries as "non-starters." Opp. 21. But it does not address any of the precedent recognizing similar harms as irreparable. *See* Mem. 39-42 (citing First Circuit caselaw). Defendants' only other response—that some opportunities can still be authorized as CPT under the Broadcasts, Opp. 22—ignores the opportunities that *cannot* be, which is the source of the harms described in the declarations.

## III. THE EQUITIES AND THE PUBLIC INTEREST FAVOR PLAINTIFFS

The government does not address any of the ways in which the public benefits from CPT opportunities currently being lost, nor does it identify any public benefit that offsets those and other costs inflicted by the Broadcasts. The societal costs—to employers, communities, domestic students, and the broader economy—range from cancellation of a course whose doctoral student instructor was denied CPT, MSU Decl. ¶ 7.1.6; to employers' last-minute losses of student interns, Wisconsin Decl. ¶ 37(a-c); PA Decl. ¶ 20; MSU Decl. ¶¶ 7.3.4, 8; NAFSA Decl. ¶ 12; to students' plans to transfer to institutions abroad, AAU Decl. ¶ 22; Vanderbilt Decl. ¶ 11; to difficulties attracting top talent from abroad, Cornell Decl. ¶¶ 28-29; Wisconsin Decl. ¶¶ 42, 12; among others.

The government asserts that an injunction "is contrary to the public interest as it would interfere with the inherent authority of DHS and SEVP to oversee and regulate" F-1 student employment. Opp. 23. But "there is generally no public interest in the perpetuation of unlawful agency action." *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 76 (1st Cir. 2025) (quoting *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). And an injunction here would bar only an unlawful exercise of DHS and SEVP authority.

The government also points to the Broadcasts' references to preventing fraud and protecting national security. Opp. 22-23. But Plaintiffs explained why relief here would not interfere with any legitimate interests in accurate SEVIS reporting, detection of fraud, and enforcement of the CPT regulation. Mem. 43-44. Like the Broadcasts themselves, the Opposition fails to identify any logical thread between those interests and the new CPT policy, and the mere invocation of "national security," Opp. 22, is not sufficient to justify unlawful agency action.

## IV. THE COURT SHOULD STAY THE BROADCASTS AND ENJOIN ENFORCEMENT OF THEIR STATED POLICY

Plaintiffs request two forms of preliminary relief—a stay of the Broadcasts' effective date

under 5 U.S.C. § 705 and a preliminary injunction barring Defendants from implementing or enforcing the Broadcasts' interpretation of the CPT regulation as to Plaintiffs, their members, and their member institutions' employees and students. The government does not contest the propriety of the relief requested if the Broadcasts are unlawful. Opp. 25-26.

A § 705 stay is warranted and sensible here because the Broadcasts are a single directive addressed to every SEVP-certified institution. *See Woonasquatucket River Watershed Council*, 186 F.4th at 52-56 (§ 705 stay operates "on the agency action itself"). Relief limited to a subset of schools "would require maintaining parallel regulatory regimes and making repeated and potentially inconsistent determinations of whether a particular student or institution falls within the scope of the order," while a § 705 stay would "prevent[] [that] chaos and confusion." *Presidents' Alliance on Higher Educ. & Immigr. v. U.S. Dep't of Homeland Sec.*, 2026 WL 2690098, at *23 (D. Mass. Sept. 14, 2026), *appeal docketed*, No. 26-2112 (1st Cir. Oct. 1, 2026).

Even if the Broadcasts are stayed, injunctive relief is also necessary to ensure that the government does not punish Plaintiffs or their members based on the same unlawful interpretation of the CPT regulation. *See Doe v. Trump*, 157 F.4th at 80. Indeed, by insisting that the Broadcasts have no force of their own but instead merely remind regulated entities of existing requirements, the government has made clear that it is threatening to enforce their new interpretation of the CPT regulation regardless of whether the Broadcasts remain in effect. And it has not clearly disclaimed any intent to apply that interpretation retroactively. A preliminary injunction is thus necessary to provide Plaintiffs and their members complete relief.

## CONCLUSION

The Court should preliminarily enjoin Defendants from implementing or enforcing the Broadcasts' interpretation of 8 C.F.R. § 214.2(f)(10)(i), including retroactively, and stay the Broadcasts under 5 U.S.C. § 705 until judicial review concludes.

Dated: November 4, 2026

Respectfully submitted,

JENNER & BLOCK LLP

By: */s/ Lindsay C. Harrison*

Ishan K. Bhabha (*pro hac vice*)
Ian Heath Gershengorn (*pro hac vice*)
Lindsay C. Harrison (*pro hac vice)*
Elizabeth Henthorne (*pro hac vice*)
Anjali Motgi (*pro hac vice*)
Daniel Schwei (*pro hac vice*)
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
IBhabha@jenner.com
IGershengorn@jenner.com
LHarrison@jenner.com
BHenthorne@jenner.com
AMotgi@jenner.com
DSchwei@jenner.com

Shoba Pillay, BBO No. 659739
353 North Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
SPillay@jenner.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2026, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

*/s/ Lindsay C. Harrison*

Lindsay C. Harrison (*pro hac vice)*
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
LHarrison@jenner.com

Dated: November 4, 2026